In the Matter of the Arbitration between STATE OF NEW YORK DEPARTMENT OF CORRECTIONAL SERVICES, Petitioner, and C.S.E.A., Respondent.

Supreme Court, Orange County, January 5, 1989

### APPEARANCES OF COUNSEL

*Barton W. Bloom* for respondent. *Robert Abrams, Attorney-General,* for petitioner.

### OPINION OF THE COURT

PETER C. PATSALOS, J.

Who should bear the expense of transporting and securing an inmate produced under a court-issued subpoena? That is the question raised by the present application.

By way of background, the Department of Correctional Services of the State of New York brought charges against its employee Kelly Salvagin for allegedly entering into a relationship with John Filomena, while incarcerated at the Otisville Correctional Facility. Claiming his testimony to be necessary for a proper defense, C.S.E.A., on Salvagin's behalf, sought to compel the attendance of the inmate (since transferred to

Wallkill Correctional Facility) at a hearing at the Otisville facility. The Department of Correctional Services, while not objecting to the subpoena, took the position that "the state should not be burdened with the cost of producing an inmate at a hearing where such production is sought by a * * * party for its own benefit". The court signed the subpoena but reserved on the question of costs.

As an initial matter, the court finds, and the parties agree, that Civil Rights Law § 79 (3) has no direct application to the case under consideration. That statute refers only to actions or suits in which the inmate is a party.

Turning to a consideration of the CPLR, section 2302 (b) of that statute specifically authorizes the court (upon certain conditions not relevant here) to issue subpoenas "to compel attendance of any person confined in a penitentiary or jail". In addition, CPLR 2303 provides that "[a]ny person subpoenaed shall be paid * * * authorized traveling expenses and one day's witness fee", set by section 8001 of the statute at "two dollars for attendance fees and eight cents as travel expenses for each mile". Nowhere does the CPLR make any exception for witness fees for inmates, and it is presumed that the Legislature, in making the law, weighed the potential expense to the State against the "chilling" effect the imposition of additional costs on private persons would have on the truth-seeking process and opted in favor of an unhampered truth-seeking process (cf., People v Oliveri, 18 AD2d 1049). Had the Legislature intended to make an exception to the standard witness fees or impose conditions other than that the subpoena be issued by a court—which procedure already serves to eliminate frivolous requests and unnecessary expense (see, Sebastiano v State of New York, 112 Misc 2d 1027, 1028)—it certainly could and would have done so. No such exception or procedure, however, is to be found notwithstanding the fact that the statute regarding witness fees has recently been amended (see, CPLR 8001 [a]; L 1988, ch 23 [eff Jan. 1, 1989]).

The court may sympathize with the Department of Correctional Services and the State, but its function here is not to second-guess the Legislature and rewrite its laws, but rather to interpret the law as written (see, Neuman v Cornwall Cent. School Dist., 138 Misc 2d 429). Any exception to the statutory fee schedule must, then, come from that body.

Accordingly, under the facts of the present case and based upon current law, the court concludes that the Department should be required to produce the inmate at the Otisville facility hearing solely upon the payment of $2 witness fee and 8 cents per mile.